**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

JUN – 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**SECURITIES AND EXCHANGE COMMISSION,**
100 F Street, NE
Washington, DC 20549-4010,

                                        **Applicant,**

**v.**

**O.J. CHIDOLUE,**
9301 Southwest Freeway, Suite 405
Houston, TX  77074,

                                        **Respondent.**

Case: 1:07-mc-00247
Assigned To : Friedman, Paul L.
Assign. Date : 6/1/2007
Description: MISC.

**APPLICATION OF**
**SECURITIES AND EXCHANGE COMMISSION**
**FOR AN ORDER TO SHOW CAUSE  AND**
**AN ORDER REQUIRING OBEDIENCE TO SUBPOENA DUCES TECUM**

        1.        Respondent O.J. Chidolue ("Chidolue") has refused to comply with the

SEC's Subpoena requiring him to appear for testimony before the SEC and to produce

documents which show, among other things, (i) the business activities of ERHC Energy

Inc. ("ERHC") and persons associated with it in the United States and abroad, (ii)

information related to banking and financial institution accounts of ERHC and persons

associated with it, and (iii) information related to specific banking and securities

transactions engaged in by Chidolue.  Such documents are directly relevant to the SEC's

ongoing investigation into possible violations of the federal securities laws by ERHC and

others.  Chidolue has not produced any documents to the SEC, nor has he appeared for

testimony.

2.      The SEC hereby applies to this Court for an Order, in the form submitted, requiring Chidolue to show cause why he should not be ordered by this Court to produce documents and appear for testimony pursuant to the SEC's Subpoena.[1]

3.      Jurisdiction is conferred upon this Court, and venue properly lies within the District of Columbia, pursuant to Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(c).

4.      In support of this Application, the SEC submits the accompanying Declaration of staff attorney Michael K. Catoe ("Catoe Decl."), the exhibits thereto, and a Memorandum Of Law In Support Of Application For An Order To Show Cause And An Order Requiring Obedience To Subpoena.

5.      On February 2, 2006, pursuant to Sections 21(a) and 21(b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and 78u(b), the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation captioned, In the Matter of ERHC Energy Inc. (the "Formal Order"). Catoe Decl. Exh. 1.

6.      On November 15, 2006, the SEC served a Subpoena on Chidolue requiring him to produce documents on or before November 30, 2006 and to give testimony before the SEC on December 7, 2006 (the "Subpoena"). Catoe Decl. Exh. 2. Despite numerous extensions of time to produce documents and appear, Chidolue has failed to comply with the Subpoena. Catoe Decl. at ¶¶ I-S.

7.      Chidolue's documents and testimony are relevant to matters under investigation and may provide evidence regarding whether ERHC and persons associated

---

[1]      This Application technically is not a motion subject to Local Rule 7.1(m). Members of the Division of Enforcement staff nevertheless attempted in good faith to resolve the issues raised in this Application with Chidolue's counsel before filing it with the Court, and prior to counsel's withdrawal on April 12, 2007.

with it violated the federal securities laws. The documents and testimony sought by the SEC are, therefore, both relevant and important to the SEC's investigation and within the scope of the Formal Order.

WHEREFORE, the SEC respectfully requests:

## I.

That the Court enter an Order to Show Cause, in the form submitted, directing the Respondent Chidolue to show cause why this Court should not enter the proposed Order requiring production documents and appearance for testimony;

## II.

That the Court enter an Order, in the form submitted, requiring the Respondent Chidolue to comply fully with the Subpoena; and

## III.

That the Court order such other and further relief as may be necessary and appropriate to achieve compliance with the Subpoena.

Dated: June 1, 2007                    Respectfully submitted,

Dean M. Conway (DC Bar No. 457433)
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010
(202) 551-4412 (Direct)
(202) 772-9246 (Fax)
conwayd@sec.gov

Attorney for Applicant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**SECURITIES AND EXCHANGE COMMISSION,**
100 F Street, NE
Washington, DC 20549-4010,

                             **Applicant,**

v.

**O. J. CHIDOLUE,**
9301 Southwest Freeway, Suite 405
Houston, TX  77074,

                           **Respondent.**

Misc. No.:

---

**MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE
AND AN ORDER REQUIRING OBEDIENCE TO SUBPOENA**

      The Securities and Exchange Commission ("Commission" or "SEC") submits this memorandum in support of its Application, pursuant to Section 21(c) of the Securities Exchange Act of 1934, to compel respondent O. J. Chidolue ("Chidolue") to comply with a subpoena, issued on November 15, 2006, seeking the production of documents and testimony needed by the SEC to investigate possible violations of the federal securities laws by ERHC Energy Inc. ("ERHC") and others.

**PRELIMINARY STATEMENT**

      This matter arises out of Chidolue's failure to comply with an administrative subpoena ("Subpoena") issued by the SEC in connection with its formal investigation into potential violations of the federal securities laws by ERHC and others.  The Subpoena required Chidolue to produce documents which show, among other things, (i) the business activities of ERHC and persons associated with it, including any communications with or payments to any government officials in Nigeria or Sao Tome and Principe, (ii) information related to banking and financial

institution accounts of ERHC and persons associated with it, and (iii) information related to specific banking and securities transactions engaged in by Chidolue. Such documents are directly relevant to the SEC's ongoing investigation into possible violations of the federal securities laws by ERHC and others. Despite several extensions of the original deadline set for his compliance, Chidolue has neither produced documents nor appeared before the SEC for testimony. In light of Chidolue's continuing refusal to obey the Subpoena, the SEC files this Application to compel his obedience.

## STATEMENT OF FACTS

Chidolue is an attorney licensed and practicing in Houston, Texas. Chidolue was represented in this matter until April 12, 2007, by a Houston-based attorney named Robert S. Bennett ("Bennett") of the Bennett Law Firm. Presently, Chidolue is not represented. Chidolue represents Chrome Energy, LLC ("Chrome Energy"), a Delaware limited liability company based in Houston, Texas. Chrome Oil Services Ltd., a subsidiary of Chrome Energy, is the majority shareholder in ERHC. ERHC is a Colorado-incorporated, publicly-traded company operating out of Houston, Texas. ERHC's common stock is registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and is traded on the OTC Bulletin Board under the symbol "ERHE." Declaration of Michael K. Catoe ("Catoe Decl.") ¶ E.

On June 3, 2005, the staff of the SEC's Division of Enforcement ("Staff") initiated an informal inquiry into possible violations of the federal securities laws by ERHC. Catoe Decl. ¶ C. Afterwards, a formal investigation was commenced on February 2, 2006. The Order Directing Private Investigation And Designating Officers To Take Testimony ("Formal Order") authorizes the Staff to investigate whether ERHC and others have violated, are violating, or are about to violate certain of the anti-bribery, books and records, and internal controls provisions of the federal

securities laws. Catoe Decl. Exh. 1. On May 4, 2006, the Department of Justice executed a search warrant of ERHC's offices in Houston, Texas. Catoe Decl. ¶ F.

The Staff discovered during the course of the investigation that, although Chidolue represents Chrome Energy as its legal counsel, he also served, during at least a portion of the time period of 2005–2007, as the Secretary and a director of Chrome Management Services Inc. ("Chrome Management"). Chrome Management is a Texas corporation affiliated with Chrome Energy. Catoe Decl. ¶¶ G–H. The Staff thereafter served, on November 15, 2006, its Subpoena on Chidolue at his office in Houston, Texas. The Subpoena required Chidolue to produce, among other things, certain documents concerning the business activities of ERHC, Chrome Energy, and its affiliates. The original return date of the Subpoena for documents was November 30, 2006. Catoe Decl. ¶ I & Exh. 2. The Subpoena also required Chidolue to appear for testimony on December 7, 2006 at the SEC's Headquarters in Washington, D.C. Id.

On November 30, 2006, Renee E. Moeller-Taylor ("Moeller-Taylor") of the Bennett Law Firm ("BLF") informed the Staff by telephone that Chidolue had recently provided a copy of the Subpoena to her firm. Catoe Decl. ¶ J. In a subsequent letter to the Staff dated November 30, 2006, Moeller-Taylor stated that Chidolue had retained BLF to represent him with respect to the Subpoena and that Bennett would be the attorney of record. She also wrote that Chidolue had been out of the country for an extended period and that he was not expected to return until mid-December 2006. Moeller-Taylor further indicated that BLF would collect and produce documents responsive to the Subpoena and would schedule a date for Chidolue's testimony shortly after he returned to the United States. Catoe Decl. ¶ K & Exh. 3.

The Staff had several subsequent telephone conversations with Bennett in which he indicated that Chidolue, a native of Nigeria, was still traveling abroad in his home country and that he would not return to the United States, as previously anticipated, by mid-December 2006.

Bennett also explained that Chidolue was the only one who could review his files for the purpose of responding to the Subpoena and that this could not be accomplished until Chidolue returned to the United States. In consideration of this explanation, the Staff granted Chidolue more time to respond to the Subpoena. Catoe Decl. ¶ L. On January 22, 2007, Bennett sent the Staff an email indicating that Chidolue did return to the United States in mid-January and that Bennett would contact the Staff in the "next couple of days" to schedule Chidolue's testimony. Catoe Decl. ¶ M & Exh. 4.

On January 30, 2007, the Staff had another telephone conversation with Bennett in which the Staff agreed to extend the time for Chidolue's production of documents until February 22, 2007. Bennett indicated in this conversation that Chidolue would be available for testimony sometime in mid-March. Catoe Decl. ¶ N. On February 23, 2007, the Staff left a voice message for Bennett because no documents had been produced on February 22, 2007. Catoe Decl. ¶ O. Upon receiving no response from Bennett, the Staff sent a letter to him dated March 19, 2007. The Staff's letter indicated that it was still waiting for a response to the February 23rd voice message. The letter also made it clear that if Chidolue continued to fail to comply with the Subpoena, the SEC would explore other options to secure his compliance. Catoe Decl. ¶ P & Exh. 5

Bennett next telephoned the Staff on March 22, 2007. During this call, he explained that Chidolue had provided him with approximately two boxes of responsive documents during his last trip to the United States in mid-January. Bennett informed the Staff, however, that he was not prepared to produce these documents because Chidolue needed to review them first. In addition, Bennett indicated that ERHC's counsel, Akin, Gump, Strauss, Hauer & Feld, LLP, would also need to review the documents for potential privilege claims by ERHC prior to any production to the Staff. Catoe Decl. ¶ Q.

Bennett further indicated that Chidolue possessed other documents responsive to the Subpoena. Bennett said that although he did not know the volume of these documents, he thought that they probably were located in Houston. Bennett also indicated that Chidolue had neither reviewed these other documents nor provided them to Bennett when he was in the United States in mid-January. Catoe Decl. ¶ R. Bennett also said that Chidolue was again in Nigeria but could not definitively say whether Chidolue had been back to the United States since mid-January. Finally, Bennett indicated that he believed that Chidolue might be in the United States sometime in mid-April and that, if he was, he would try to have Chidolue review the existing documents, as well as provide him with the other documents identified by Chidolue. Catoe Decl. ¶ S.

More than six months have passed since the Staff issued the Subpoena to Chidolue. Despite many extensions of time, Chidolue has still not produced any documents or made himself available for testimony.

## ARGUMENT

### I.    Jurisdiction And Venue Are Proper

When a subpoenaed party refuses to comply with an SEC subpoena, jurisdiction is vested in the United States District Courts to enforce such subpoena upon application by the SEC. 15 U.S.C. § 77v(b); 15 U.S.C. § 78u(c). Accordingly, this Court has jurisdiction over the subject matter of this application and may issue an order directing Chidolue to comply with the Subpoena at issue.

Venue is proper before this Court because an SEC subpoena enforcement action may be brought in any United States District Court "within the jurisdiction of which such investigation or proceeding is carried on." 15 U.S.C. §78u(c). The investigation at issue here is being conducted out of the SEC's headquarters in Washington, DC, and the Subpoena was issued

and returnable in Washington, DC.  Therefore, venue for the enforcement of the Subpoena appropriately lies in this District.

## II.    The Subpoena Satisfies All Requirements For Enforcement

To enforce an administrative subpoena, a court must be satisfied that (i) the inquiry has a legitimate purpose, (ii) the subpoena was issued in accordance with the required administrative procedures and (iii) the information sought is reasonably relevant to some subject of the inquiry.  United States v. Powell, 379 U.S. 48, 57-58 (1964).[1]  Once these threshold criteria are met, the burden shifts to the opposing party to establish that the subpoena is unreasonable.  SEC v. Brigadoon Scotch Distrib. Co., 480 F.2d 1047, 1056 (2d Cir. 1973), cert. denied, 415 U.S. 915 (1974).  The burden of showing unreasonableness "is not easily met."  Id.  None of these elements are in controversy on this Application as Chidolue has not -- nor could he -- contest the Subpoena on grounds of SEC authority.

### A.    The SEC's Inquiry Has A Legitimate Purpose

Congress created the SEC as an independent regulatory agency having the primary responsibility to enforce the federal securities laws and thus primary responsibility to protect the integrity of the nation's capital markets.  Toward that end, in Section 21(a) of the Exchange Act, Congress gave the SEC broad authority to conduct such investigations as it deems necessary in order to determine whether any person "has violated, is violating or is about to violate" any provisions of the federal securities laws.  See 15 U.S.C. § 78u(a); see also SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 741 (1984); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1376-77 (D.C. Cir.), cert. denied, 449 U.S. 993 (1980).  Further, Congress gave the SEC authority to investigate "any

---

[1]    See also Penfield Co. v. SEC, 330 U.S. 585 (1947); SEC v. Arthur Young, 584 F.2d 1018, 1024 (D.C. Cir. 1978), cert. denied, 439 U.S. 1071 (1979); SEC v. Blinder, Robinson & Co., Inc., 681 F. Supp. 1, 4 (D.D.C. 1987); SEC v. Gulf Res., Inc., Fed. Sec. L. Rep. (CCH) ¶ 99,174 (D.D.C. Apr. 15, 1983); SEC v. Dresser Indus. Inc., 453 F. Supp. 573, 557 (D.D.C. 1978).

facts, conditions, practices or matters" that, in its discretion, the SEC deems necessary or proper to aid in the enforcement of the federal securities laws. 15 U.S.C. § 78u(a)(1).

Courts routinely have recognized that, given this broad statutory authority, "there is virtually no possibility" that the SEC, in commencing an investigation or issuing an administrative subpoena, is acting ultra vires.[2] Indeed, as the United States Supreme Court explained in United States v. Morton Salt Co., 338 U.S. 632 (1950), an agency can investigate upon mere suspicion that the law has been violated, without a showing of probable cause. The Court explained that:

> [An agency] has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too may take steps to inform itself as to whether there is probable violation of the law.

Id. at 642-43. The SEC thus is acting within the scope of its Congressionally-granted authority even where its investigation is based on nothing more than official curiosity. See, e.g., SEC v. Arthur Young, 584 F.2d 1018, 1023-24 & n.45 (D.C. Cir. 1978), cert. denied, 439 U.S. 1071 (1979) (quoting Morton Salt) (recognizing that "even if one were to regard a request for information . . . as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and public interest").

Here, on February 2, 2006, pursuant to its authority under Section 21(a) of the Exchange Act, the SEC issued a Formal Order that authorizes the Division of Enforcement to

---

[2]    See, e.g., Dresser Industries, 628 F.2d at 1380 (investigation based on Staff conclusion that company "may have engaged in conduct" in violation of the federal securities laws "falls squarely within the [SEC]'s explicit investigatory authority"); Blinder Robinson, 681 F. Supp. at 4 (acknowledging that "[a]s the SEC is charged with overseeing the securities industry and preventing fraud in the trading of stocks and bonds, it is well within the scope of its authority to request information necessary to dispel or confirm suspicions of which they have substantive evidence").

investigate ERHC for potential violations of the federal securities laws. Catoe Decl. ¶ D. The Staff, consistent with the Formal Order, seeks information from Chidolue about the business activities of ERHC, Chrome Energy, and others in order to determine whether ERHC or others have violated the federal securities laws. The SEC's investigation -- and the Subpoena issued in connection therewith -- is unquestionably within the scope of the Formal Order and the SEC's Congressionally-authorized law enforcement powers.

**B.    All Administrative Requirements Have Been Satisfied**

Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), provides that the Commission may, in the course of conducting investigations, designate officers and empower them to subpoena witnesses. 15 U.S.C. § 78u(b). Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, investigative subpoenas may be served by several methods, including by any method conveying actual notice. 17 C.F.R. §§ 203.8 and 201.14(b)(3). Here, a Division of Enforcement staff attorney, designated in a Formal Order as an officer of the Commission, issued the Subpoena to Chidolue and a copy of the Subpoena was served on Chidolue. Catoe Decl. at ¶ I. Chidolue's receipt of the Subpoena is not in controversy.

**C.    The Subpoena Seeks Information Relevant To The Investigation**

As the D.C. Circuit recognized, in Arthur Young, the SEC's subpoena power is "co-extensive" with its investigative power and, thus, a conclusion that the subpoena is too indefinite or seeks irrelevant information is essentially "foredoomed by [the Court's] holding that the scope of the investigation itself is adequately bounded." Arthur Young, 584 F.2d at 1025. That is:

> The breadth of an investigation is for the investigators to determine. The breadth of a subpoena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators.

Id. at 1031; see also Blinder Robinson, 681 F. Supp. at 4 (prima facie evidence that the evidence sought has potential importance in terms of the investigative objectives is sufficient to validate the scope of the request). The threshold for demonstrating relevance, thus, is low.

There can be no question here that the information sought by the SEC concerning the business activities of ERHC and others associated with it is highly relevant (and, indeed, reasonably tailored) to the SEC's investigation. The SEC need not show (i) probable cause that a violation has occurred in order to investigate an issuer for possible violations of the federal securities laws or (ii) likelihood of success in a litigation that it may or may not commence at the conclusion of its investigation. See Point II.A, supra. Indeed, as this Court explained in In re: Grand Jury Proceeding No. 92-4, 201 F. Supp.2d 5 (D.D.C. 1999), albeit in the context of a grand jury subpoena:

> Whether the subpoenas will reveal incriminating evidence is at this stage speculative. Grand jury investigations, no less than other investigations, will necessarily meet dead-ends. The point is simply that leads cannot be foreclosed before they are pursued.

Id. at 11. For all of the foregoing reasons, the Court should find that the SEC has satisfied its burden on this motion.

## CONCLUSION

For the reasons stated above and in the SEC's Application, the SEC requests that the Court grant the Application and enter: (i) an Order, in the form submitted, requiring Chidolue to show cause why he should not be ordered to produce documents and appear for testimony pursuant to the Subpoena properly issued by the SEC and served upon him; and (ii) an Order, in the form submitted, requiring obedience to the Subpoena.

Dated: June __1__, 2007                Respectfully submitted,

_____
Dean M. Conway (DC Bar No. 457433)
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010
(202) 551-4412 (Direct)
(202) 772-9246 (Fax)
conwayd@sec.gov

Attorney for Applicant

10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SECURITIES AND EXCHANGE COMMISSION,**
**100 F Street, NE**
**Washington, DC 20549-4010,**

                    **Applicant,**

**v.**

**O.J. CHIDOLUE,**
**9301 Southwest Freeway, Suite 405**
**Houston, TX 77074,**

                **Respondent.**

**Misc. No.:**

## DECLARATION OF MICHAEL K. CATOE
## IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE AND
## FOR AN ORDER REQUIRING OBEDIENCE TO SUBPOENA

I, Michael K. Catoe, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

A.     I am an attorney admitted to the Bar of the District of Columbia and the Bar of the State of Maryland. I am employed as a staff attorney by the United States Securities and Exchange Commission ("SEC" or "Commission") in the Division of Enforcement, at the SEC's headquarters office in Washington, D.C.

B.     This Declaration is submitted in support of the SEC's Application for an Order to Show Cause and an Order Requiring Obedience to Subpoena directed to O.J. Chidolue ("Chidolue"), and is based upon my direct participation in the investigation encaptioned In the Matter of ERHC Energy Inc.

C.      On June 3, 2005, the Staff of the SEC's Division of Enforcement ("Staff") initiated an informal inquiry into possible violations of the federal securities laws by ERHC Energy Inc. ("ERHC").

D.      On February 2, 2006, pursuant to Section 21(a) of the Exchange Act, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation entitled In the Matter of ERHC Energy Inc. (the "Formal Order"). The Formal Order authorizes the Staff to investigate whether ERHC has violated, is violating, or is about to violate the following books and records, internal controls, and anti-bribery provisions of the federal securities laws: Sections 13(b)(2)(A), 13(b)(2)(B), 13(b)(5), and 30A of the Exchange Act and Rule 13b2-1 promulgated thereunder. See Catoe Decl. Exh. 1.

E.      ERHC is a Colorado-incorporated, publicly-traded company based in Houston, Texas. ERHC's common stock is registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and is traded on the OTC Bulletin Board under the symbol "ERHE." Chrome Oil Services Ltd. ("Chrome Oil"), a Nigerian company with an office in Houston, Texas, is the majority shareholder in ERHC.

F.      On May 4, 2006, the Department of Justice executed a search warrant of ERHC's offices in Houston, Texas, pursuant to a warrant issued by a United States Magistrate Judge in the United States District Court for the Southern District of Texas, Houston Division.

G.      During the course of the ERHC investigation, the staff served a subpoena on Chrome Energy, LLC ("Chrome Energy"), a Delaware limited liability

company based in Houston, Texas that is the parent of Chrome Oil.  Chidolue acted as counsel to Chrome Energy for purposes of responding to the SEC subpoena.

        H.     The Staff discovered during the course of the ERHC investigation that Chidolue served, during at least a portion of the time period of 2005–2007, as the Secretary and a director of Chrome Management Services Inc. ("Chrome Management"), a Texas corporation.  Chrome Energy, Chrome Oil, and Chrome Management are affiliated companies that all use the same office address as ERHC in Houston, Texas.

        I.     On November 15, 2006, the Staff issued and served a Subpoena upon Chidolue at his office in Houston, Texas.  The original return date for the Subpoena was November 30, 2006.  The Subpoena calls for, among other things, the production of certain documents concerning the business activities of ERHC, Chrome Energy, and its affiliates, as well as Chidolue's appearance for testimony at the SEC's Headquarters in Washington, D.C.  See Catoe Decl. Exh. 2.

        J.     Renee E. Moeller-Taylor, of the Bennett Law Firm in Houston, Texas, informed the Staff by telephone on November 30, 2006, that the firm had recently received the Subpoena from Chidolue's office.

        K.     Renee E. Moeller-Taylor informed the Staff by letter on November 30, 2006, that the Bennett Law Firm would be representing Chidolue with respect to the Subpoena, and that Robert S. Bennett ("Bennett") would be the attorney of record. Ms. Moeller-Taylor also explained in the letter that Chidolue had been out of the country for some time and was expected back in mid-December 2006.  She further indicated that Bennett's office would work to collect and produce responsive documents from Chidolue and to schedule a date for his testimony shortly after his return to the United States.  See Catoe Decl. Exh. 3.

L.    The Staff had several telephone conversations with Bennett after its initial contact with the Bennett Law Firm, during which Bennett indicated that Chidolue, who is Nigerian, was still traveling abroad in Nigeria beyond his anticipated return date of mid-December 2006.  Bennett also explained during these conversations that Chidolue was the only one who could review his work files for the purpose of responding to the Subpoena, which he could not do until he returned to the United States. In consideration of Chidolue's extended travel plans as communicated by Bennett, the Staff granted Chidolue additional time to respond to the Subpoena.

M.    On January 22, 2007, Bennett informed the Staff by email that Chidolue had returned to the United States in mid-January, and that Bennett would contact the staff within the next couple of days regarding when Chidolue would appear for testimony.  See Catoe Decl. Exh. 4.

N.    The Staff had a telephone conversation with Bennett on January 30, 2007, during which the Staff agreed to extend the time for Chidolue's production of documents until February 22, 2007.  Bennett indicated in this conversation that Chidolue would be available for testimony sometime in mid-March.

O.    The Staff left a voice message with Bennett on February 23, 2007, because no documents had been produced on February 22, 2007 as agreed.  Bennett never responded to this voice message.

P.    The Staff sent a letter to Bennett on March 19, 2007, in which the Staff explained that if Chidolue did not respond to the Subpoena by producing documents and making himself available for testimony, it would consider other options to secure compliance with the Subpoena.  See Catoe Decl. Exh. 5.

Q.    Bennett telephoned the Staff on March 22, 2007, in response to the Staff's letter of March 19, 2007. During this telephone conversation, Bennett explained that when Chidolue was in the United States in mid-January, he provided approximately two boxes of documents to Bennett that concern the requests from the Subpoena. Bennett also explained during the call that he was not prepared to produce these documents because Chidolue would need to review them first, as he had not done so prior to providing them to Bennett. In addition, Bennett indicated that ERHC's counsel at Akin, Gump, Strauss, Hauer & Feld, LLP in Washington, D.C., would also need to review the documents for potential privilege claims by ERHC prior to any production to the Staff.

R.    Bennett also indicated during the March 22, 2007 telephone conversation with the Staff that Chidolue has additional documents in his possession and control that concern the requests from the Subpoena. Bennett stated that he did not know the volume of these documents, and believed that they are likely in Houston, Texas. Bennett further indicated that Chidolue did not take the time to review these additional documents or provide them to Bennett when Chidolue was in the United States in mid-January.

S.    Bennett informed the Staff during the March 22, 2007 telephone conversation that Chidolue was in Nigeria again, but could not say definitively whether Chidolue had been back to the United States since mid-January. Bennett also explained that his firm would attempt to get Chidolue to work on reviewing the initial set of documents and providing additional responsive documents to Bennett's office when Chidolue returned to the United States. Bennett did not know definitively when Chidolue would return to the United States, but he believed that it could possibly be in mid-April.

5

T.    Bennett informed the Staff by telephone and email on April 12, 2007 that he and the Bennett Law Firm were no longer representing Chidolue.  See Catoe Decl. Exh. 6.

U.    Attached as exhibits to my declaration are true and correct copies of the following documents:

| Exhibit No. | Description |
|---|---|
| 1. | Formal Order. |
| 2. | Subpoena. |
| 3. | Letter dated November 30, 2006 from Moeller-Taylor to SEC. |
| 4. | Email dated January 22, 2007 from Bennett to SEC. |
| 5. | Letter dated March 19, 2007 from SEC to Bennett. |
| 6. | Email dated April 12, 2007 from Bennett to SEC. |

I declare under penalty of perjury that the foregoing is true and correct.
Executed on June __1__, 2007.


Michael K. Catoe

NON-PUBLIC

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

February 2, 2006

| | |
|---|---|
| In the Matter of | : |
| | : |
| | : **ORDER DIRECTING PRIVATE** |
| ERHC ENERGY INC. | : **INVESTIGATION AND** |
| | : **DESIGNATING OFFICERS** **FILED** |
| | : **TO TAKE TESTIMONY** |
| File No. HO-10247 | : **JUN - 1 2007** |
| | : |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

I.

The Commission's official public files disclose that:

ERHC Energy Inc. is a Colorado corporation headquartered in Houston, Texas. ERHC's common stock is registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and is traded on the OTC Bulletin Board under the symbol "ERHE."

II.

Members of the staff have reported information to the Commission that tends to show that, from at least 1997 through the present:

A.    ERHC, or other persons acting on its behalf, may have made use of the mails or a means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of money, or offer, gift, promise to give, or authorization of the giving of anything of value to a foreign official for purposes of (A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or (B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person;

B.    ERHC, or other persons acting on its behalf, may have made use of the mails or a means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of money, or offer, gift, promise to give, or authorization of the giving of anything of value to a foreign political party or official thereof or a

candidate for foreign political office for purposes of (A)(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or (B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person;

C.     ERHC, or other persons acting on its behalf, may have made use of the mails or a means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of money, or offer, gift, promise to give, or authorization of the giving of anything of value to a person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to a foreign official, to a foreign political party or official thereof, or to a candidate for foreign political office, for purposes of (A)(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, or (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage; or (B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person;

D.     ERHC may have failed to make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of ERHC;

E.     ERHC may have failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (1) transactions were executed in accordance with management's general or specific authorization; (2) transactions were recorded as necessary (a) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (b) to maintain accountability for assets; (3) access to assets was permitted only in accordance with management's general or specific authorization; and (4) the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences;

F.     Present or former officers, directors or employees of ERHC, and other persons may have knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified books, records, or accounts described in Paragraph II.D above;

G.    Present or former officers, directors or employees of ERHC, and other persons, directly or indirectly, may have falsified or caused to be falsified, books, records or accounts described in Paragraph II.D above; and

H.    While engaged in the activities described in Paragraphs II.D through G above, such persons, directly or indirectly, may have made use of any means, or instrumentality of interstate commerce, or of the mails.

III.

The Commission, having considered the information provided by the staff, and deeming such acts and practices, if true, to be in possible violation of Sections 13(b)(2)(A), 13(b)(2)(B), 13(b)(5), and 30A of the Exchange Act and Rule 13b2-1 promulgated thereunder, finds it necessary and appropriate and hereby:

**ORDERS**, pursuant to Section 21(a) of the Exchange Act, that a private investigation be conducted to determine whether the aforesaid persons or any other persons have engaged in, are engaging in, or are about to engage in any of the aforesaid acts or practices, or acts or practices of similar purport or object; and

**FURTHER ORDERS**, pursuant to Section 21(b) of the Exchange Act that, for the purposes of such investigation, Paul R. Berger, Richard W. Grime, Kevin M. Loftus, Michael K. Catoe, Craig Welter and Giles T. Cohen and each of them, are hereby designated officers of the Commission and are empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of books, papers, correspondence, memoranda or any other records deemed relevant or material to the inquiry and to perform all other duties in connection therewith as prescribed by law.

By the Commission.

Nancy M. Morris
Secretary

By: Jill M. Peterson
    **Assistant Secretary**

3



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

November 15, 2006

**VIA FACSIMILE & FEDERAL EXPRESS**
**(713) 270-5565**

O.J. Chidolue, Esq.
Chidolue & Associates
9301 Southwest Freeway, Suite 405
Houston, Texas 77074

*FILED*

*JUN - 1 2007*

*NANCY MAYER WHITTINGTON, CLERK*
*U.S. DISTRICT COURT*

Re:   *In the Matter of ERHC Energy Inc.,*
      *SEC File No. HO-10247*

Dear Mr. Chidolue:

The staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to give us documents and to provide sworn testimony.

As part of your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment. To expedite that part of the testimony, we are asking you to complete the enclosed questionnaire on a voluntary basis and return it to the staff by November 30, 2006. Please note that the staff reserves the right to question you at testimony concerning the matters in the questionnaire; however, we anticipate that receiving the requested information beforehand will reduce the need to discuss these matters on the record.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to give us the documents described in the attachment to the subpoena. You must provide these documents by the date indicated on the subpoena. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of

O.J. Chidolue, Esq.
November 15, 2006
Page 2

the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you prefer, you may send us photocopies of the originals. The Commission cannot reimburse you for the copying costs. The copies must be identical to the originals, including even faint marks or print. If you choose to send copies, you must keep the originals in a safe place. The staff will accept the copies for now, but may require you to produce the originals later.

If you do send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state which paragraph(s) in the subpoena attachment each item responds to.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send all the materials described in it. If, for any reason—including a claim of attorney-client privilege—you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and

- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

O.J. Chidolue, Esq.
November 15, 2006
Page 3


*Where should I send the materials?*

Please send the materials to:

> Michael K. Catoe, Esq.
> U.S. Securities and Exchange Commission
> Division of Enforcement
> 100 F Street, N.E.
> Washington, DC  20549-4631

## Testifying

*Where and when do I testify?*

The subpoena requires you to come to the Commission's offices at 100 F Street, N.E., Washington, DC 20549 on Thursday, December 7, 2006, to testify under oath in the matter identified on the subpoena.  The testimony will be transcribed by a court reporter.


## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes.  You have the right to consult with and be represented by your own lawyer in this matter.  Your lawyer may also advise and accompany you when you testify.  We cannot give you legal advice.

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of Information provided to the Commission.  This form has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

O.J. Chidolue, Esq.
November 15, 2006
Page 4


    If you have any other questions, you may call me at (202) 551-4464, or Kevin
Loftus, Branch Chief, at 202-551-4917.  If you are represented by a lawyer, you should
have your lawyer contact us.


                                    Sincerely,


                                    Michael K. Catoe
                                    Senior Counsel


Enclosures:    Subpoena w/attachment
               Background Questionnaire
               SEC Form 1662



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of ERHC Energy Inc., HO-10247

To:    O.J. Chidolue, Esq.
       Chidolue & Associates
       9301 Southwest Freeway, Suite 405
       Houston, Texas 77074

☒    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below.

100 F Street, N.E., Washington, DC 20549-4631, Thursday, November 30, 2006 at 9:30 a.m.

☒    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below.

100 F Street, N.E., Washington, DC 20549-4631, Thursday, December 7, 2006 at 9:30 a.m.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____    Date: _11-15-06_____
    Michael K. Catoe
    Senior Counsel
    U.S. Securities and Exchange Commission
    Division of Enforcement
    100 F Street, N.E.
    Washington, DC 20549-4631

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:    If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT TO THE SUBPOENA TO
## O.J. CHIDOLUE

### INSTRUCTIONS

A.  This subpoena requires the production of original documents. For your convenience, and at your expense, you may provide photocopies of the documents. If you choose to produce copies, you must maintain the originals in a secure place. At your option, you may produce documents that are maintained in electronic format in that format in lieu of producing paper copies. However, the staff reserves the right to request paper copies of such documents if necessary.

B.  Provide the documents as they are kept in the ordinary course of business, including copies of all file folders, cover sheets, memoranda, fax sheets, routing slips or other documents which might indicate the dissemination of the documents. To the extent that the identity of a document's author or source is not apparent from the face of the document, provide the identity of the author or source in addition to the document.

C.  Provide all non-identical documents, including all drafts.

D.  Affix a bates label or other identifying mark to each page of each document produced.

E.  To the extent that you have already provided any document requested, you may list in your transmittal letter the bates range of the document and the number of the request to which it is responsive in lieu of producing the document again.

F.  Your transmittal letter should indicate that you have made a thorough search of all documents in your possession, custody or control and have produced all documents responsive to the subpoena. If no documents responsive to a particular request exist, you should so state in your transmittal letter.

G.  If any responsive documents are withheld based upon an assertion of privilege, include with your transmittal letter a privilege log setting forth the following information for each document withheld: (i) the date of the document; (ii) a description of the document (*e.g.*, "memorandum," "letter," "notes"); (iii) the author(s) of the document; (iv) all recipients of the document; (v) all others who have been informed about the substance of the document even if they did not receive it; (vi) the subject matter of the document; and (vii) the nature of the privilege asserted (*i.e.*, attorney-client, attorney work product).

### DEFINITIONS

A.  The term "communication" includes letters, memoranda, electronic mail, notes, summaries, documents, face-to-face, telephonic and video-transmitted conversations, or any other contact, formal or informal, whereby information of any nature was transmitted or transferred.

B.  The term "concerning" means relating to, referring to, reflecting, describing, evidencing, constituting, or otherwise establishing any reasonable, logical or causal connection.

*Attachment to Subpoena*
*to O.J. Chidolue*

C.    The term "Chrome" refers to Chrome Energy, LLC and all entities in which it has or has had a controlling interest, all of its subsidiaries, affiliates, divisions, groups, predecessors, successors, officers, directors, employees, agents, consultants, general partners, limited partners, partnerships, special purpose entities or joint ventures in which it has an interest, and all aliases, code names, or trade or business names used by any of the foregoing, including Chrome Oil Services, Ltd.

D.    The term "ERHC" refers to ERHC Energy Inc. and all entities in which it has or has had a controlling interest, all of its subsidiaries, affiliates, divisions, groups, predecessors, successors, officers, directors, employees, agents, consultants, general partners, limited partners, partnerships, special purpose entities or joint ventures in which it has an interest, and all aliases, code names, or trade or business names used by any of the foregoing.

E.    The term "Feltang" refers to Feltang International Limited and/or Feltank International Limited and all entities in which they have or have had a controlling interest, all of their subsidiaries, affiliates, divisions, groups, predecessors, successors, officers, directors, employees, agents, consultants, general partners, limited partners, partnerships, special purpose entities or joint ventures in which they have an interest, and all aliases, code names, or trade or business names used by any of the foregoing.

F.    The term "document" means all materials in your possession, custody or control, personal or otherwise, whether drafts or unfinished versions, originals or nonconforming copies thereof, however created, produced or stored (manually, mechanically, electronically or otherwise), and by whomever prepared, produced, sent, dated, received, or used, including books, papers, files, notes, electronic mail, minutes, summaries, records, analyses, memoranda, correspondence, work papers, spreadsheets, ledger sheets, journal entries, canceled checks, confirmations, invoices, account statements, reports, wires, telegrams, telexes, telephone logs, message slips, notes or records of conversations or meetings, contracts, agreements, calendars, date books, bills, records of payment, magnetic tapes, tape recordings, disks, diskettes, disk packs and other electronic media, microfilm, microfiche, and all other storage devices.

G.    The term "person" means any natural person or any business, legal or government entity, or association.

H.    The term "SEC" refers to the United States Securities and Exchange Commission.

I.    The following rules of construction apply to this attachment:

    a.  the term "any" shall include "all," and the term "all" shall include "any," as needed to make the request inclusive and not exclusive;

    b.  the term "and" shall include "or," and the term "or" shall include "and," as needed to make the request inclusive and not exclusive;

    c.  the use of the singular form of any word includes the plural and vice versa; and

    d.  the term "including" and its variants shall mean "including but not limited to" and its corresponding variants.

*Attachment to Subpoena*
*to O.J. Chidolue*

## **DOCUMENTS TO BE PRODUCED**

Produce the following documents:

1.      All documents concerning ERHC, including any communications between you or any person acting on your behalf and ERHC or any person acting on its behalf.

2.      All documents concerning Chrome, including any communications between you or any person acting on your behalf and Chrome or any person acting on its behalf.

3.      All documents concerning any positions that you have held with ERHC or Chrome at any time, including:

        a.      all documents concerning any compensation that you received for such positions, including any stock option grants;

        b.      all documents concerning any employment, consulting, or professional services agreement you had with ERHC or Chrome; and

        c.      all documents concerning the scope of your responsibilities and/or authority in connection with any position you held with ERHC or Chrome.

4.      All documents concerning your ownership of any securities of ERHC at any time, including all brokerage account statements, stock certificates, documents concerning any consideration exchanged for such securities, and any communications by ERHC to its shareholders.

5.      All documents concerning any banking or financial institution accounts of ERHC, Chrome, or Emeka Offor, including all statements on any such accounts, for the period January 1, 2003 – present.

6.      All documents concerning Emeka Offor's involvement in or affiliation with any business in the United States or abroad for the period January 1, 2001 – present.

7.      All documents concerning Feltang.

8.      All documents concerning any communications with any representative of the governments of Sao Tome and Principe or Nigeria, the Joint Development Authority, or the Joint Ministerial Council.

9.      All documents concerning any payment of money or transfer of anything of value by ERHC, Chrome, or any person acting on the behalf of either to any foreign official, including any official of the governments of Sao Tome and Principe or Nigeria, the Joint Development Authority, or the Joint Ministerial Council.

10.     All documents concerning any banking, financial institution, and securities brokerage accounts (i) in your name; (ii) in the name of any member of your household; (iii) in which you

-4-

*Attachment to Subpoena*
*to O.J. Chidolue*

have joint or custodial control; (iv) or in which you have or had any beneficial interest or held or exercised authority or control with respect to trading or other account activity at any time during the period January 1, 2001 – present, including:

      a.     all account opening documentation, new account worksheets, new account forms, deposit documentation, trading authorizations, margin agreements, option agreements, powers of attorney, discretionary agreements, signature cards, and special instructions;

      b.     all account statements for the period June 1, 2003 – present;

      c.     all confirmations, order tickets, execution forms, notes, e-mail, correspondence, or other documents concerning the contemplated, attempted, effected, or cancelled purchase or sale of the common stock and derivative securities of ERHC; and

      d.     all communications, memoranda, correspondence, e-mail, or other documents concerning any brokerage accounts for the period June 1, 2003 – present.

11.    All documents concerning your daily appointments, activities, meetings, and whereabouts during the period January 1, 2003 – present, including calendars, daytimers, appointment books, and electronic organizer devices.

12.    All documents concerning communications you have had with Emeka Offor, including all email communications.

13.    All documents reflecting any services you have rendered for or on behalf of ERHC, Chrome, or Emeka Offor, including all time sheets, invoices, engagement letters, and correspondence.

## **BACKGROUND QUESTIONNAIRE**

**Please respond to the following questions in the space provided. If you need additional space for any response, you may attach additional pieces of paper.**

Today's date: _____

1.    What is your full name?

_____

2.    Have you ever been known by any other name?  Yes __ No

If yes, list each such name and the period(s) in which you were known by that name.

_____
_____
_____

3.    Social Security Number? _____

4.    Date and Place of Birth?

_____

5.    Country of Citizenship?

_____

6.    Marital Status?  Married __ Divorced __ Single

If you have ever been married, state for each marriage: (i) the date(s) of the marriage; (ii) the name of your spouse; and (iii) your spouse's maiden name, if any.

_____
_____
_____

7.    List the names, ages and occupations of your children, if any.

_____
_____
_____
_____
_____

8.    List all residences you occupied at any time during the last three years, including vacation homes, beginning with your current residence. For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

_____
_____
_____

9.    List all telephone numbers and telephone credit card numbers that were in your name or that you regularly used at any time during the last three years. Include all residential, business, car, credit card and cellular telephone numbers, including those listed in your response to question 8. For each telephone number, state the name(s) of the corresponding long distance carrier(s) (e.g., Sprint, MCI, AT&T), if any.

_____
_____
_____

## PUBLICLY-HELD COMPANIES

10.    Are you now, or have you ever been, an officer or director of any publicly-held company? Yes __ No

If yes, identify each such company and state your positions and the dates you held each position.

_____
_____
_____

11.    Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company? Yes __ No

If yes, identify each such company, and state the amount, percentage, and dates of your ownership.

_____
_____
_____

## PRIOR PROCEEDINGS

12.    Have you ever testified in any proceeding conducted by the staff of the Securities and
       Exchange Commission, a federal or state agency, a federal or state court, a stock
       exchange, the National Association of Securities Dealers ("NASD") or any other self-
       regulatory organization ("SRO"), or in any arbitration proceeding related to securities
       transactions?  Yes ___  No

       If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the
       organization or agency; and (iii) the date(s) on which you testified.

       _____
       _____
       _____
       _____

13.    Have you ever been deposed in connection with any court proceeding?  Yes ___  No

       If yes, for each such proceeding, identify: (i) the title of the proceeding, and (ii) the
       date(s) on which you were deposed.

       _____
       _____
       _____
       _____

14.    Have you ever been named as a defendant or respondent in any action or proceeding
       brought by the SEC, any other federal agency, a state securities agency, the NASD or any
       stock exchange?  Yes ___  No

       If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the agency or
       tribunal; (iii) the substance of the allegations; (iv) the outcome of the proceeding; and (v)
       the date of the outcome.

       _____
       _____
       _____
       _____

15.   Have you ever been a defendant in any action (other than those listed in response to question 14) alleging violations of the federal securities laws?  Yes __  No

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

16.   Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes __  No

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

17.   Have you ever been a defendant in any action (other than those listed in response to the above questions)?  Yes __  No

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

## EDUCATIONAL HISTORY

18.   Provide the requested information about each educational institution that you have attended beyond junior high school, beginning with the most recent and working backward to the date that you completed high school.

_____
Name of School

_____
City                          State                     Country                    Zip Code

_____
Dates of Attendance: Month/Year to Month/Year          Degree/Major               Month/Year of Degree

- 4 -

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

19.  Other than courses taken in connection with institutions listed in response to question 18, list any securities or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

_____
_____
_____
_____

## PROFESSIONAL LICENSES/CLUBS

20.  Do you hold, or have you ever held, any professional license?  Yes__  No

If yes, for each such license, identify: (i) the license; (ii) the licensing organization; (iii) the date the license was awarded; (iv) the date such license terminated, if applicable; (v) the date(s) of any disciplinary proceeding(s) against you: and (vi) the outcome of any such disciplinary proceeding (e.g., reprimand, suspension, revocation).

_____
_____
_____
_____

21.    Are you, or have you ever been, a member of any professional or business club or organization?   Yes __  No

If yes, list for each: (i) the name of the club or organization; (ii) its address; and (iii) the date(s) of your membership.

_____
_____
_____
_____

## EMPLOYMENT HISTORY

22.    State your employment activities, beginning with the present and working backward to the date that you completed high school.

| Employer's Name/Self-Employment | | | Your Title |
| --- | --- | --- | --- |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
| --- | --- | --- | --- |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
| --- | --- | --- | --- |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

- 6 -

| | | | |
|---|---|---|---|
| Employer's Name/Self-Employment | | | Your Title |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| | | | |
|---|---|---|---|
| Employer's Name/Self-Employment | | | Your Title |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| | | | |
|---|---|---|---|
| Employer's Name/Self-Employment | | | Your Title |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| | | | |
|---|---|---|---|
| Employer's Name/Self-Employment | | | Your Title |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

## CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

#### False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

#### Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony whenever during your testimony you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned to afford you the opportunity to arrange to do so.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly .... willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true... is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

SEC 1662 (5-04)

5.  *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you or subject you to fine, penalty or forfeiture.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

### Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director, Regional Director, or District Administrator with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

### Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209



of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To coordinate law enforcement activities between the SEC and other federal, state, local or foreign law enforcement agencies, securities self-regulatory organizations, and foreign securities authorities.

2. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

3. Where there is an indication of a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program statute, or by regulation, rule or order issued pursuant thereto, the relevant records in the system of records may be referred to the appropriate agency, whether federal, state, or local, a foreign governmental authority or foreign securities authority, or a securities self-regulatory organization charged with the responsibility of investigating or prosecuting such violation or charged with enforcing or implementing the statute or rule, regulation or order issued pursuant thereto.

4. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

5. To a federal, state, local or foreign governmental authority or foreign securities authority maintaining civil, criminal or other relevant enforcement information or other pertinent information, such as current licenses, if necessary to obtain information relevant to an agency decision concerning the hiring or retention of an employee, the issuance of a security clearance, the letting of a contract, or the issuance of a license, grant or other benefit.

6. To a federal, state, local or foreign governmental authority or foreign securities authority, in response to its request, in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

7. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

3

8. When considered appropriate, records in this system may be disclosed to a bar association, the American Institute of Certified Public Accountants, a state accountancy board or other federal, state, local or foreign licensing or oversight authority, foreign securities authority, or professional association or self-regulatory authority performing similar functions, for possible disciplinary or other action.

9. In connection with investigations or disciplinary proceedings by a state securities regulatory authority, a foreign securities authority, or by a self-regulatory organization involving one or more of its members.

10. As a data source for management information for production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies, and to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act or to locate specific individuals for personnel research or other personnel management functions.

11. In connection with their regulatory and enforcement responsibilities mandated by the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), or state or foreign laws regulating securities or other related matters, records may be disclosed to national securities associations that are registered with the Commission, the Municipal Securities Rulemaking Board, the Securities Investor Protection Corporation, the federal banking authorities, including but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation, state securities regulatory or law enforcement agencies or organizations, or regulatory law enforcement agencies of a foreign government, or foreign securities authority.

12. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or the Commission's Rules of Practice, 17 CFR 202.100-900, or otherwise, where such trustee, receiver, master, special counsel or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice.

13. To any persons during the course of any inquiry or investigation conducted by the Commission's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

14. To any person with whom the Commission contracts to reproduce, by typing, photocopy or other means, any record within this system for use by the Commission and its staff in connection with their official duties or to any person who is utilized by the Commission to perform clerical or stenographic functions relating to the official business of the Commission.

15. Inclusion in reports published by the Commission pursuant to authority granted in the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)).

16. To members of advisory committees that are created by the Commission or by the Congress to render advice and recommendations to the Commission or to the Congress, to be used solely in connection with their official designated functions.

17. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 735-18, and who assists in the investigation by the Commission of possible violations of federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

18. Disclosure may be made to a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

19. To respond to inquiries from Members of Congress, the press and the public which relate to specific matters that the Commission has investigated and to matters under the Commission's jurisdiction.

20. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

21. To respond to subpoenas in any litigation or other proceeding.

22. To a trustee in bankruptcy.

4

23. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-942-4530 or the SEC's Small Business Ombudsman at 202-942-2950. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

************ -COMM. JUURNAL- ***************** DATE NOV-15-2006 *** TIME 16:38 ********

MODE = MEMORY TRANSMISSION            START=NOV-15 16:30    END=NOV-15 16:38

      FILE NO.=989

STN     COMM.    ONE-TOUCH/   STATION NAME/TEL NO.                PAGES    DURATION
NO.              ABBR NO.

001     OK        ☎           17132705565                        023/023  00:06:52


                                                    -ENF 8TH FL.          -

************************************ -202 9429519   - ***** -           - ********

# U.S. SECURITIES
# & EXCHANGE COMMISSION
### 100 F Street, N.E.
### Washington, D.C. 20549-4010



## DIVISION OF ENFORCEMENT
## FACSIMILE TRANSMISSION

From: *Michael K. Cutor, Esq.*

Telephone #:   (202) 551- 4464
Telecopier #:   (202) 772- 9233

## PLEASE DELIVER THE FOLLOWING PAGES *TO*:

NAME: *O. G. Chidolue, Esq.*

FIRM: *Chidolue & Associates*

TELEPHONE #: _____

TELECOPIER #: (713) 270-5565

TOTAL # OF PAGES, INCLUDING COVER SHEET: _____

COMMENTS: _____
_____
_____

*Confidentiality Notice*
*This transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If you have received this transmission in error, please do not disclose, distribute, or copy it by any means, and please notify us immediately by telephone and return the original document to us at the above address via the United States Postal Service. If you do not receive all the pages, please call back as soon as possible.*

From:   Origin ID:   (202)551-4494
Vergia Booker
U.S. Securities Exchange Commission
100 F Street NE
MAIL STOP 4010A
Washington, DC 20549


FedEx Express

CLS108366/19/23

Ship Date: 15NOV06
ActWgt: 1 LB
System#: 1352135/INET2500
Account#: S ********

REF:

Delivery Address Bar Code

SHIP TO:   (000)000-0000          BILL SENDER
O.J. Chidolue, Esq.
Chidolue & Associates
9301 Southwest Freeway
Suite 405
Houston, TX 77074



**PRIORITY OVERNIGHT**                          **THU**

TRK#   **7922  4131  4560**   FORM 0201          Deliver By:
                                                16NOV06
                              **IAH**           A2

**77074**    -TX-US

**XH JGQA**

---

Shipping Label: Your shipment is complete

1.  Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2   Fold the printed page along the horizontal line.

3.  Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# THE BENNETT LAW FIRM, P.C.
## *Attorneys and Counselors at Law*

**Robert S. " Bob" Bennett**
Board Certified in Consumer and
Commercial Law
Texas Board of Legal Specialization
Fellow–College of the State Bar of Texas
Email: bbennett@bennettlawfirm.com

**Renée E. Moeller-Taylor**
rmoeller@bennettlawfirm.com

515 Louisiana, Suite 200
Houston, Texas 77002
Telephone (713) 225-6000
Facsimile (713) 225-6001
Website:  www.bennettlawfirm.com

**Steve D. Peterson, Of Counsel**
Former General Counsel
To the State Bar of Texas

**R.P. "Skip" Cornelius, Of Counsel**
Board certified in Criminal Law
Texas Board of Legal Specialization

November 30, 2006

Mr. Michael Catoe
Mr. Kevin Loftus
US Securities & Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010

Via Facsimile: (202) 772-9233
and Regular Mail

Re:  O.J. Chidolue, Esq.
    In the Matter of ERHC Energy, Inc., SEC File No. HO-10247

**FILED**

JUN - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Gentlemen:

        Per my telephone conference with you this afternoon, please be advised this my
firm will be representing Okey J. Chidolue, Esq., in the above-referenced matter.  As we
discussed, Mr. Chidolue has been out-of-the-country since mid to late October and has
not even seen the subpoena and questionnaire that was faxed to his attention early this
month.  We anticipate Mr. Chidolue's return sometime the week of December 11, 2006.
With that understanding, we believe that we will be able to supply whatever documents
are available per the subpoena, along with the completed questionnaire sometime after
January 15, 2007, after which Mr. Chidolue can appear to testify.

        We will notify you once Mr. Chidolue has returned and we have had an
opportunity to speak with him.

        Mr. Robert S. Bennett of our firm will be the attorney of record for Mr. Chidolue.
Should you have any questions, please contact either myself or Mr. Bennett.

Sincerely,

*Renée E. Moeller-Taylor*

Renée E. Moeller-Taylor
REMT/ss

**From:** Bob Bennett [bbennett@bennettlawfirm.com]
**Sent:** Monday, January 22, 2007 4:21 PM
**To:** Catoe, Michael
**Cc:** Bob Bennett
**Subject:** O J Okey J. "O.J." Chidolue

Dear Mr. Cato,

   I have contacted  OJ who has been in the country for about a week about your request and he should be able to give me an answer in the next couple of days as to when we can come to DC.  We appreciate your patience with scheduling a meeting.

Very truly yours,
Bob Bennett

# Robert S. Bennett
# The Bennett Law Firm
# The Lancaster Hotel Center
# Suite 200
# 515 Louisiana St.
# Houston, Texas 77002
# Phone: 713-225-6000
# fax: 713-225-6001
# www.bennettlawfirm.com
# www.bennettlawfirmmed.com

*Certified in Consumer and Commercial Law by the*
*Texas Board of Legal Specialization*

FILED

JUN - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CONFIDENTIALITY NOTICE -
This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an attorney work product or, (3) strictly confidential.  If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information.  If you have received this in error, please reply and notify the sender (only) and delete the message.  Unauthorized interception of this e-mail is a violation of federal criminal law.

This communication does not reflect an intention by the sender or the sender□s client or principal to conduct a transaction or make any agreement by electronic means.  Nothing contained in this message or in any attachment shall satisfy the requirements for writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.

IRS Circular 230 Disclosure
Pursuant to U.S. Treasury Department Regulations, we are now required to advise you that any federal tax advice contained in this communication, including attachments and enclosures, is not intended by the Sender of The Bennett Law Firm, P.C. to constitute a covered opinion pursuant to regulation section 10.35 or to be used for the purpose of (1) avoiding tax-related penalties under Internal Revenue Code or (ii)

promoting, marketing, or recommending to another party any tax-related matters addressed herein.



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

March 19, 2007

**VIA FACSIMILE & FIRST-CLASS MAIL**
**(713) 225-6001**

Robert S. Bennett, Esq.
The Bennett Law Firm, P.C.
515 Louisiana, Suite 200
Houston, Texas 770002

FILED

Re:    *In the Matter of ERHC Energy Inc.,*
       SEC File No. HO-10247_____

JUN - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Dear Mr. Bennett:

As you are aware, the staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. I am writing this letter as a further effort to secure a response from your client, O.J. Chidolue, to the subpoena issued by the staff to him on November 15, 2006, pursuant to the investigation. The subpoena required Mr. Chidolue to produce documents to the staff by November 30, 2006, and to appear at the Commission's offices in Washington, DC for testimony on December 7, 2006.

Renee E. Moeller-Taylor from your office first informed the staff by letter on November 30, 2006, that you would be representing Mr. Chidolue in this matter. Ms. Moeller-Taylor also explained at that time that your office had only recently received the subpoena and that Mr. Chidolue had been out of the country for some time and was not expected back until mid-December 2006. She further indicated that your office would work to collect and produce responsive documents from Mr. Chidolue and to schedule a date for his testimony shortly after his return to the United States.

We have had several telephone conversations with you since our initial contact with your office, during which you indicated that Mr. Chidolue was still traveling abroad beyond his anticipated return date, and that no one else could review his work files until he returned to the country. In consideration of this explanation, we granted Mr. Chidolue additional time to respond to our subpoena. On January 22, 2007, you informed us by email that Mr. Chidolue had returned to the United States in mid-January, and that you would soon be able to produce documents and schedule his testimony.

During my telephone conversation with you on January 30, 2007, I agreed to extend the time for Mr. Chidolue's production of documents until February 22, 2007, and you indicated that Mr. Chidolue would be available for testimony sometime in mid-March. I left you a voice message on February 23, 2007, to discover the status of Mr.

Robert S. Bennett, Esq.
March 19, 2007
Page 2

Chidolue's document production, and to receive from you some proposed dates in March for his testimony.

Although we have repeatedly extended the production and testimony dates under the subpoena in order to accommodate your extension requests and Mr. Chidolue's travel schedule, we have yet to receive from your office any documents from Mr. Chidolue, any proposed testimony dates, or any communication explaining the further delay. Please contact me by March 22, 2007, regarding these matters. If we do not receive the subpoenaed documents and available testimony dates for Mr. Chidolue, we will consider other options to secure compliance with the subpoena.

Please contact me at (202) 551-4464, or Kevin Loftus, Branch Chief, at (202) 551-4917, to discuss this matter.

Sincerely,

Michael K. Catoe
Senior Counsel

```
*********** -COMM. RNAL- ***************** DATE MAR-19-200.  ***** TIME 13:41 ********

     MODE = MEMORY TRANSMISSION              START=MAR-19 13:40     END=MAR-19 13:41

        FILE NO.=394

    STN    COMM.   ONE-TOUCH/  STATION NAME/TEL NO.                  PAGES     DURATION
    NO.             ABBR NO.

    001    OK      ☎           17132256001                          003/003   00:01:01

                                                            -ENF 8TH FL.          -

*********************************** -202 9429519   - ***** -               - ********
```

# U.S. SECURITIES
# & EXCHANGE COMMISSION
### 100 F Street, N.E.
### Washington, D.C. 20549-4010

3/19/07

## DIVISION OF ENFORCEMENT
## FACSIMILE TRANSMISSION

From: _Michael K. Catoe, Esq_

Telephone #:  (202) 551-*4464*
Telecopier #:  (202) 772-*9233*

## PLEASE DELIVER THE FOLLOWING PAGES *TO:*

NAME: _Robert S. Bennett, Esq_

FIRM: _The Bennett Law Firm, P.C._

TELEPHONE #:

TELECOPIER #: _(713) 225-6001_

TOTAL # OF PAGES, INCLUDING COVER SHEET:  _3_

COMMENTS:

*Confidentiality Notice*
This transmission is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If you have received this transmission in error, please do not disclose, distribute or copy it by any means, and please notify us immediately by telephone and return the original document to us at the above address via the United States Postal Service. If you do not receive all the pages, please call back as soon as possible.

# THE BENNETT LAW FIRM, P.C.
## Attorneys and Counselors at Law

**Robert S. "Bob" Bennett**
Board Certified in Consumer
and Commercial Law
Texas Board Of Legal Specialization
Fellow–College of the State Bar of Texas
Email: bbennett@bennettlawfirm.com

**Renée E. Moeller**
rmoeller@bennettlawfirm.com

515 Louisiana, Suite 200
Houston, Texas 77002
Telephone (713) 225-6000
Facsimile (713) 225-6001
Website: www.bennettlawfirm.com

**Steve D. Peterson, Of Counsel**
Former General Counsel
to the State Bar of Texas

**R. P. "Skip" Cornelius, Of Counsel**
Board Certified in Criminal Law
Texas Board of Legal Specialization

**FILED**

## FACSIMILE TRANSMITTAL SHEET

DATE:    April 13, 2007

JUN - 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### CONFIDENTIALITY NOTICE

The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named below. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal Service. Thank you.

| FAX SENT TO: | FAX NUMBER: |
|---|---|
| Michael K. Catoe | (202) 772-9233 |
|  |  |
|  |  |

FROM:    Scott Chauveaux
         File Clerk to Robert S. Bennett

CASE:    06325

Total Pages (Including Cover Sheet): 3

RE:    Representation of Mr. Chidolue

Comments:   Please find attached email correspondence from Mr. Bennett. Thank you.

**PERSONAL AND CONFIDENTIAL. If you have any difficulty in receiving this transmission, please call (713) 225-6000, immediately. Thank you.**

"Aggressive Fighting for the Right is
the Noblest Sport the World Affords."
Theodore Roosevelt

**Bob Bennett**

| | |
|---|---|
| **To:** | Michael K. Catoe (catoem@sec.gov); Robert Hardy (Outside); Robert Hardy; =SMTP:rmhardy@roberbnhardy.com |
| **Cc:** | o. j. chidolue |
| **Subject:** | Representation of Mr. Chidolue |
| **Contacts:** | Michael K. Catoe |

Thursday, April, 12, 2007
Sent by email and by fax
(no other written confirmation to follow)
Re: Representation of Mr. Chidolue

Dear Mr. Catoe,

   This email will confirm our conversation of this date  in which at the request of my client, I have been instructed to tell you that the Bennett Law Firm and the undersigned no longer represent Mr. Chidolue. As I further informed you, I know of no other counsel at the present time who has undertaken his representation. Thank you for the courtesies extended in this matter.

   Very truly yours,

*Bob Bennett*


[: ]
**Robert S. Bennett**
**The Bennett Law Firm**
**The Lancaster Hotel Center**
**Suite 200**
**515 Louisiana St.**
**Houston, Texas 77002**
**Phone: 713-225-6000**
**fax: 713-225-6001**
**www.bennettlawfirm.com**
**www.bennettlawfirmmed.com**

*Certified in Consumer and Commercial Law by the
Texas Board of Legal Specialization*


4/12/2007

CONFIDENTIALITY NOTICE -
This transmission may be: (1) subject to the Attorney-Client Privilege, (2) an attorney work product or, (3) strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.

This communication does not reflect an intention by the sender or the sender's client or principal to conduct a transaction or make any agreement by electronic means. Nothing contained in this message or in any attachment shall satisfy the requirements for writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.

IRS Circular 230 Disclosure
Pursuant to U.S. Treasury Department Regulations, we are now required to advise you that any federal tax advice contained in this communication, including attachments and enclosures, is not intended by the Sender of The Bennett Law Firm, P.C. to constitute a covered opinion pursuant to regulation section 10.35 or to be used for the purpose of (1) avoiding tax-related penalties under Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any tax-related matters addressed herein.

4/12/2007